Theron C. Spruell and Spruell Pharmacy (hereinafter collectively referred to as "the licensees") appeal from a judgment of the Jefferson Circuit Court upholding an order entered by the Alabama State Board of Pharmacy ("the Board") suspending the licensees from the practice of dispensing drugs in Alabama for a 30-year period.
In February 2003, the Board first initiated administrative disciplinary proceedings against the licensees. In the pertinent part of that complaint, the Board alleged that the licensees had failed to keep required records, to maintain a complete inventory list, to generate computer printouts of drugs dispensed daily, to cull outdated drugs from stock, and to maintain inventories and records of controlled substances; the licensees were also accused of having dispensed controlled substances without a prescription and having committed gross negligence or gross malpractice. At a hearing on those charges, counsel for the Board and counsel for the licensees stipulated that sufficient evidence existed to support the pertinent charges in the February 2003 administrative complaint. The Board then entered an order in April 2003 in which the licensees were fined and their pharmacy licenses were suspended pending "the completion of a satisfactory inspection by the Board" of Spruell Pharmacy "wherein all drugs are properly labeled, out of date drugs properly disposed of and all records and documentation required by law have been provided," after which the license suspensions would revert to probationary status.
After the April 2003 order went into effect, an investigation by Board representatives indicated that the licensees might have continued to dispense drugs despite the Board's suspension of their licenses. The Board then sought and obtained an injunction from the Jefferson Circuit Court against the licensees; the Board also initiated new administrative proceedings against the licensees on October 10, 2003, alleging that the licensees had violated the April 2003 order by continuing to fill prescriptions while the licenses were under suspension — in effect, engaging in pharmaceutical practice without valid licenses. The October 2003 complaint indicated that a hearing would be held on November 18, 2003, on the matters alleged therein. The licensees filed a motion for a more definite statement, which the Board expressly denied, and a motion for a continuance, which was denied by implication.
At the start of the November 18, 2003, hearing, the Board's hearing officer asked *Page 131 
whether there were "any pre-hearing matters to [be taken] care of," at which time both counsel for the Board and counsel for the licensees responded in the negative. The hearing then proceeded normally, with the attorneys for both sides tendering witnesses for testimony and documentary evidence for the Board's consideration. After "chat hearing, the Board met and deliberated. On November 25, 2003, an order was issued containing findings of fact, including findings that the licensees had filled 838 prescriptions, had obtained reimbursement from major third-party payors for those prescriptions, and had ordered drugs from wholesalers while their licenses were suspended pursuant to the Board's April 2003 order; the order also contained conclusions of law, including conclusions that the licensees' conduct amounted to violations of a number of statutes governing the pharmaceutical practice. The order stated that each licensee would be required to pay a fine of $10,000 and that each license would be suspended for 30 years (subject to a right to apply for reinstatement in 5 years). The order was signed by the Board's secretary.
The licensees filed a petition in the Jefferson Circuit Court seeking judicial review of the November 2003 order. After a hearing, the circuit court entered an order determining that the Board's statement of charges had adequately and sufficiently set forth the matters upon which the licensees were charged, that the administrative proceedings were fair and reasonable, and that the licensees had the "full benefit" of counsel; however, the court, after opining that the Board's secretary was not empowered to execute final orders, remanded the cause to the Board for the Board to decide whether the November 2003 order reflected its findings and its judgment. The Board responded to the remandment by issuing an order in October 2004 that was executed by the Board's current and immediate past presidents but that made no substantive changes to the November 2003 order. The circuit court then entered a judgment of affirmance, concluding that the Board had complied with the remand order. The licensees then appealed to this court.
In Jones v. Alabama State Board of Pharmacy, 624 So.2d 613,614-15 (Ala.Civ.App. 1993), we noted the applicable principles that govern appellate review here:
 "Appellate review of administrative actions is limited to a determination of `whether the agency acted within its powers conferred upon it by law and the constitution, whether its decision is supported by substantial evidence, and whether the agency's decision is reasonable and not arbitrary.' Alabama Board of Nursing v. Herrick, 454 So.2d 1041,1043 (Ala.Civ.App. 1984).
 ". . . .
 "The Board has powers and duties via Ala. Code 1975, § 34-23-92. Among those duties, § 34-23-92(12) provides that the duty of the Board is to conduct hearings to revoke, suspend, or probate any license or permit granted by the Board, and it additionally provides that an appeal may be taken in accordance with the provisions of § 34-23-94.
 ". . . .
 "The determination of whether a licensee should have his license revoked involves judgment and expertise in the particular field of the licensee. This judgment and expertise is presumed to exist in the board of each field, and we will not disturb the decision of a board unless judgment or discretion is abused or exercised in an arbitrary or capricious manner."
On appeal, the licensees assert that "the cumulative effect" of what they term "the lack of rules for disciplining pharmacists *Page 132 
throughout the [administrative] process" warrants a conclusion that the licensees' constitutional right to due process has been violated (and, therefore, that the circuit court's judgment should be reversed). In support of that single contention, however, the licensees merely present a laundry list of generalized grievances. To the extent that the licensees have supported their arguments with citations to authority, as required by Rule 28(a)(10), Ala. R.App. P., we summarize those grievances as follows: (1) that the Board does not have sufficient guidelines that govern the institution of disciplinary actions against its licensees; (2) that the Board does not specify its standard of proof; (3) that the Board improperly allows its secretary to fill multiple roles; and (4) that the Board in this case improperly relied on hearsay evidence. We conclude that each of those grievances lacks merit.
We first examine the contention that the Board is not governed by adequate standards regarding the institution of disciplinary proceedings. The licensees advance the following argument: because criminal judicial proceedings are to be initiated by a written statement to be made under oath, and because civil judicial proceedings are subject to a good-faith pleading requirement, the Board should not be permitted to impose disciplinary sanctions that may deprive the licensees of protected rights without some sort of guarantee of the veracity of the allegations in the administrative complaint.
However, any force that the licensees' argument might have dissipates in the face of the specific language of the Alabama Administrative Procedure Act, § 41-22-1 et seq. ("the AAPA"). In contrast to the licensees' apparent belief that rigorous due-process requirements must be met in the institution of administrative proceedings, the AAPA requires only "reasonable notice in writing" of "the time, place, and nature of the hearing," a recitation of "the legal authority and jurisdiction under which the hearing is to be held," a reference "to the particular sections of the statutes and rules involved," and "[a] short and plain statement of the matters asserted." Ala. Code 1975, § 41-22-12(a) and (b).
We agree with the Board that the notice standards of § 41-22-12 were met with respect to the October 2003 complaint. As we have stated, that complaint averred that the licensees had violated the specific terms of the Board's April 2003 order by continuing to fill prescriptions while their licenses were under suspension and included a number of attached documentary records that had been obtained from the licensees by the Board tending to confirm that factual assertion. The October 2003 complaint also indicated the date and place of the scheduled hearing on the matters alleged and the Board's statutory authority to regulate conduct of its licensees. The complaint thus provided the licensees with the minimum notice required by the AAPA, and we thus may not reverse the circuit court's judgment on the basis that the Board's complaint was, in some subjective manner, objectionable.
The next issue concerns the Board's failure to specify or profess adherence to a particular governing standard of proof. The statute governing the Board's disciplinary powers leaves no doubt, however, that such a legal standard of proofdoes exist. Under § 34-23-33, Ala. Code 1975, "[t]he [B]oard may . . . suspend . . . any licensed pharmacist . . . and take the same or similar action against the permit to operate any pharmacy in this state whenever the [B]oard findsby a preponderance of the evidence . . . that the pharmacist has been guilty of any . . . act or offense" listed in that *Page 133 
statute (emphasis added). In other words, the Board is required by the legislature to apply a preponderance-of-the-evidence standard as a matter of law, and counsel for the licensees is likewise bound by that standard. That the Board found that that standard had been met in this case is, of course, the basis upon which it could lawfully discipline the licensees; therefore, the licensees' challenge to that standard as somehow amounting to a "vague" and "indefinite" one must necessarily fail.
We next turn to the role of the secretary of the Board in the proceedings. Pursuant to statute (Ala. Code 1975, §34-23-91), the Board's secretary is "the executive officer in charge of the [B]oard's office," is required to "make, keep, and be in charge of all records and record books required to be kept by the [B]oard," is to "attend to the correspondence of the [B]oard," and is to "perform any other duties the [B]oard may require in keeping with the office of secretary." Not surprisingly, according to the record, the secretary fulfilled several functions in this case, including reviewing and referring investigative findings to the Board's counsel for the preparation of a new administrative complaint after the licensees' conduct during their license suspension indicated that they were practicing without a license. When the licensees attempted to defend the October 2003 complaint on the basis that the secretary had allowed them to fill prescriptions, the secretary rebutted that evidence by testifying before the Board in the November 2003 hearing. Finally, the secretary signed the order issued after the November 2003 hearing (although the Board's current and past presidents signed a substantively similar order on remand when the secretary's authority was questioned).
The licensees, citing Withrow v. Larkin,421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975), contend that the secretary's roles amount to an unlawful blending of prosecution and adjudication. We disagree. The Supreme Court rejected inWithrow the proposition that "the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication."421 U.S. at 47, 95 S.Ct. 1456. Here, the record reflects even less: even if the secretary's referral of investigative findings to the Board's counsel for potential administrative action evidences a "prosecutorial" role under Ala. Code 1975, §41-22-18(a), the absence of any evidence demonstrating that the secretary played a role in the actual adjudication of the matters alleged in the subsequently pleaded administrative complaint — apart from completing the ministerial act of issuing the written November 2003 order evidencing the Board's decision — indicates that the circumstances of this case do not begin to demonstrate a potential conflict of interest that might rise to the level of the potential conflict of interest that was envisioned in Withrow. As inHorn v. State Board of Examiners in Counseling,689 So.2d 93, 95 (Ala.Civ.App. 1996), "the actual decision . . . was rendered by the Board."
Finally, we turn to the licensees' claim that the Board impermissibly relied upon what the licensees term "hearsay"; the licensees allege that several witnesses, representatives of Blue Cross and Blue Shield of Alabama and Medicaid, relied in their testimony on information contained in computer printouts. We note that Ala. Code 1975, § 41-22-13(1), expressly allows admission in administrative hearings of evidence "of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs," even if such evidence would be inadmissible in judicial proceedings. Although the transcript of the Board hearing indicates that certain computer *Page 134 
printouts were admitted into evidence by the Board during the November 2003 hearing and that those printouts apparently tended to show that the licensees had filed claims for payment with Blue Cross and Blue Shield of Alabama and Medicaid while their licenses were suspended, those documents are not in the record on appeal. Without the ability to examine the printouts, we cannot properly conclude that the Board admitted or considered evidence upon which "reasonably prudent persons" donot rely so as to warrant reversal of the circuit court's judgment.
Based upon the foregoing facts and authorities, the circuit court's judgment affirming the Board's November 2003 order (as adopted by its October 2004 order) is itself due to be affirmed.
AFFIRMED.
CRAWLEY, P.J., and THOMPSON, MURDOCK, and BRYAN, JJ., concur.